UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FAROOQ ABDUL ALEEM,<br><br>Plaintiff,<br><br>v.<br><br>J. LIZARRAGA, et al.,<br><br>Defendants. | No. 2:18-cv-1211 DB P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's first amended complaint is before the Court for screening.

**I.     Screening Requirement**

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

**II.    Pleading Standard**

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp.

Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**III.    Plaintiff's Allegations**

At all times relevant to this action, plaintiff was a state inmate housed at Mule Creek State Prison ("MCSP") in Ione, California. He names as defendants MCSP Warden Joe A. Lizarraga, Associate Warden B. Holmes, Correctional Officer ("CO") K. Costa, and Chief of Appeals M. Voong.

Plaintiff's allegations may be fairly summarized as follows:

On April 9, 2017, plaintiff was denied previously-authorized overnight family visits. He was notified of this decision on July 27, 2017, via a General Chrono signed by CO Costa noting plaintiff does not meet the criteria for overnight visits because of a "Conviction of a sex offense." See First Am. Compl. Attach. A. Based on documents attached to the pleading, it appears plaintiff is serving an 81-year to life sentence from San Mateo County following a conviction for, inter alia, oral copulation with force/violence/fear of immediate bodily injury, penetration with

force/violence/fear of immediate bodily injury, and sexual battery. See id. Attach B (ECF No. 13 at 16).

Plaintiff's wife and other family members mailed several letters to Warden Lizarraga requesting the reinstatement of overnight family visits. See First Am. Compl. Ex. C. Warden Lizarraga responded on September 5, 2017, noting that while plaintiff has "been a model inmate while housed at MCSP," he was not permitted such visits pursuant to California Code of Regulations, title 15, § 3177(b)(1), which prohibits family visits for inmates convicted of a sex offense.

On September 4, 2017, plaintiff filed an inmate grievance regarding the revocation of his prior authorization for family visits. First Am. Compl. Ex. G. He claimed the revocation violates Senate Bill 843, California Penal Code § 6404, which plaintiff reads to have granted family visits to inmates like him who have been sentenced to life without the possibility of parole.

On September 26, 2017, CO Costa interviewed plaintiff in response to his grievance. At this meeting, CO Costa told plaintiff to withdraw the appeal otherwise she and "the administration" will ensure that plaintiff not receive any overnight visits. CO Costa and Associate Warden Holmes then denied the appeal at the first level of review because plaintiff did not meet institutional criteria for overnight family visits. First Am. Compl. Ex. A.

On November 27, 2017, Warden Lizarraga denied plaintiff's grievance at the second level of review. First Am. Compl. Ex. D. Plaintiff was informed that while California Penal Code § 6404 prohibited a blanket bar on family visits for certain groups of inmates, inmates were still required to be otherwise eligible pursuant to institutional regulations. Since plaintiff was not otherwise eligible pursuant to § 3377(b)(1) in light of his conviction of a sex offense, his appeal was denied.

On April 17, 2018, plaintiff's grievance was denied at the third level of review by defendant Voong. First Am. Compl. Ex. G. Voong again noted that Senate Bill 843 did not guarantee family visits to "lifer" inmates; it merely prohibited their automatic exclusion from participating in such visits.

////

## IV. Analysis

### A. Visitation

Plaintiff's complaint is premised on the denial of overnight visits with family members. As addressed below, the denial of family visits does not state a claim.

In Overton v. Bazzetta, the Supreme Court considered a substantive due process claim challenging various prison regulations restricting prisoners' rights to receive visits from family members. 539 U.S. 126, 129-30 (2003). The Court's own hesitation in articulating the existence and nature of an inmate's right to receive visits from family members while in prison is instructive. Dunn v. Castro, 621 F.3d 1196, 1202 (9th Cir. 2010). The Court acknowledged that "outside the prison context, there is some discussion in our cases of a right to maintain certain familial relationships, including association among members of an immediate family and association between grandchildren and grandparents." Overton, 539 U.S. at 131. The Court, however, declined to "attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration." Id. at 132. At the same time, the Court observed that "[a]n inmate does not retain rights inconsistent with proper incarceration," and that "freedom of association is among the rights least compatible with incarceration." Id. at 131 (emphasis added). Further, despite how "severe[ly]" the prison regulations at issue in Overton restricted the prisoners' right to receive visits from their own family, including minors, id. at 134, the Court upheld the constitutionality of the challenged regulations, id. at 136-37. The denial of prison access to a particular visitor "is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468 (1983) abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995).

The Court's failure to recognize an absolute right to receive visitors in prison, to a certain extent, necessarily flows from the nature of prison, the goals it serves, and the deference owed to prison administrators in effectuating those goals. Dunn v. Castro, 621 F.3d 1196, 1203, 1205 (9th Cir. 2010). Prison serves the important purpose of deterring crime. Pell v. Procunier, 417 U.S. 817, 822 (1974). "The premise is that by confining criminal offenders in a facility where they are isolated from the rest of society, a condition that most people presumably find undesirable, they

and others will be deterred from committing additional criminal offenses." Id.; see also Rhodes v. Chapman, 452 U.S. 337, 352 (1981) (identifying the deterrence of future crime among the "goals of the penal function in the criminal justice system").

To that end, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," Pell, 417 U.S. at 822 (internal quotation marks omitted) (alteration in original), including the right to associate with individuals with whom an inmate would otherwise enjoy close personal and professional relations outside of the prison context. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 125-26 (1977) ("Perhaps the most obvious of the First Amendment rights that are necessarily curtailed by confinement are those associational rights that the First Amendment protects outside of prison walls. The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution."). In Overton, the Court reiterated the "substantial deference [courts must accord] to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." 539 U.S. at 132.

The Ninth Circuit has declined to recognize a prisoner's constitutional right to receive visits, stating that "it is well-settled that prisoners have no constitutional right while incarcerated to contact visits." Gerber v. Hickman, 291 F.3d 617, 621 (9th Cir. 2002) (en banc); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996) (affirming dismissal of prisoner's claim challenging regulation that denied him visits from persons other than his immediate family); Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (per curiam) (holding that prisoners do not have a constitutional right to contact visitation privileges); Toussaint v. McCarthy, 801 F.2d 1080, 1114 (9th Cir.1986) ("To the extent that denial of contact visitation is restrictive and even harsh, it is part of the penalty that criminals pay for their offenses against society."), abrogated in part on other grounds by Sandin. Thus, plaintiff has no right to overnight family visits.

////
/////
////

### B. First Amendment Retaliation

Plaintiff has also alleged facts against CO Costa that implicate the First Amendment. The First Amendment protects inmates from retaliation for engaging in protected conduct. A retaliation claim has five elements. Waitson v. Carter, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir.2009).

First, the plaintiff must allege that the retaliated-against conduct is protected. Protected conduct for retaliation claims may but need not be tethered to First Amendment speech or associational freedom issues. Blaisdell v. Frappiea, 729 F.3d 1237, 1242 (9th Cir. 2013). Rather, "'a claim for retaliation can be based upon the theory that the government imposed a burden on the plaintiff, more generally, because he exercised a constitutional right.'" Id., 729 F.3d at 1242 (quoting Regan v. Taxation with Representation of Washington, 461 U.S. 540, 545 (1983)). The filing of an inmate grievance is protected conduct, Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech and to petition the government, Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). Even mere threats to file suit, civil or criminal, fall within the purview of the constitutionally protected activities under the First Amendment. Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. October 6, 2017) (citing Jones v. Williams, 791 F.3d 1023, 1035-36 (9th Cir. 2015)).

Second, the plaintiff must show the defendant took adverse action against the plaintiff. Rhodes, 408 F.3d at 567. The adverse action need not be a full-fledged independent constitutional violation. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). "[T]he mere threat of harm can be an adverse action. . . ." Brodheim, 584 F.3d at 1270. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where action taken by the defendant was clearly adverse to the plaintiff. See e.g., Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison

transfer, and assault); Bruce v, Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003) (validation as a gang member); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened); Rizzo, 778 F.2d at 530-32 (reassignment out of vocational class and transfer to a different prison).

Third, the plaintiff must allege a causal connection between the first two elements. Waitson, 668 F.3d at 1114. "[A] plaintiff alleging retaliation for the exercise of constitutionally protected rights must initially show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision." Soranno's Gasco, Inc. v. Morgan, 874 F.2nd 1310, 1314 (9th Cir. 1989) (quoting Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). "Mere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). Rather, plaintiff must show either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the protected conduct, or (3) other evidence that the reasons proffered by Defendant for the adverse action were false and pretextual. McCollum v. California Department of Corrections and Rehabilitation, 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted). It is understood that direct evidence of improper motive is only rarely available. Watison, 668 F.3d at 1114; Mendocino Environmental Center v. Mendocino County, 192 F.3d 1283, 1302 (9th Cir. 1999).

Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Robinson, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Robinson, 408 F.3d at 568 n.11.

Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." Rizzo, 778 F.2d at 532. "A plaintiff

successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, or that they were unnecessary to the maintenance of order in the institution." Waitson, 668 F.3d at 1115 (quotations and citations omitted). It bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, Iqbal, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The conduct identified by Plaintiff as retaliatory must have been motivated *by* his engaging in a protected activity, and the conduct complained of must *not* have reasonably advanced a legitimate penological goal. Brodheim, 584 F.3d at 1271-72 (citations omitted). Thus, mere allegations that Plaintiff engaged in protected activity, without knowledge resulting in animus by a defendant is insufficient to show that Plaintiff's protected activity was the motivating factor behind a defendant's actions.

As noted, the revocation and denial of plaintiff's overnight family visits is the precipitating event for all of plaintiff's claims. However, as discussed previously, plaintiff was convicted of sex offenses, and his allegations clearly show that the denial/revocation of his family visits was governed by § 3177. In fact, the decision to revoke the family visits occurred prior to the September 2018 meeting with CO Costa wherein plaintiff claims this defendant threatened to revoke these visits if plaintiff did not withdraw his grievance. Nothing in the pleading shows or implies that CO Costa reviewed plaintiff's file and revoked his family visits out of animus for plaintiff's protected activity. Additionally, plaintiff's allegations do not show "the absence of legitimate correctional goals for the conduct of which he complains." Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (quoting Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995)). And, as previously stated, there is a valid rational connection between bans and restrictions on contact visits and internal security, Block, 468 U.S. at 586-87, and prison officials are entitled to substantial deference in their decisions made for the institutional safety, Overton, 539 U.S. at 131-132.

Plaintiff cannot state a cognizable retaliation claim. Revocation and denial of plaintiff's family visits was supported by Cal. Code Regs. Title 15, § 3177(b)(1) based on plaintiff's conviction, see Superintendent v. Hill, 472 U.S. 445, 455-56 (1985), and because restrictions on overnight family visits serve the legitimate penological purpose of maintaining prison safety and discipline, see Rizzo, 778 F.2d at 532.

### C. Temporary Restraining Order and Preliminary Injunction

Plaintiff's pleading includes a request for injunctive relief in the form of reinstatement of his overnight family visits. As previously stated, plaintiff has not stated a cognizable claim upon which relief may be granted, such that there is no actual case or controversy before the Court at this time, and Court lacks the jurisdiction to issue the order sought by plaintiff. Summers v. Earth Island Institute, 555 U.S. 488, 493-94 (2009); Stormans, Inc. v. Selecky, 586 F.3d 1109, 1119 (9th Cir. 2009); 18 U.S.C. § 3626(a)(1)(A). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id.

## IV. Conclusion

Plaintiff's First Amended Complaint fails to state any cognizable claims. Plaintiff should not be granted leave to amend as the defects in his pleading are not capable of being cured through amendment. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012).

Accordingly, IT IS HEREBY ORDERED that a district judge be assigned to this case; and

IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a claim and plaintiff's request for temporary restraining order and preliminary injunction be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within 14 days after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

////

////

Plaintiff's failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated: March 29, 2019

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/alee1211. Scrn 1AC